IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JENNIFER RAMSEY**, *individually and on behalf of the Estate of James Kinder, deceased*, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) 2:21cv557 ) **Electronic Filing** |
| **THE SALVATION ARMY, A NEW YORK CORPORATION**, | ) ) ) |
| Defendant. | ) |

## MEMORANDUM ORDER

AND NOW, this 6th day of February, 2025, upon due consideration of defendant's motion to preclude the opinions of plaintiff's experts, the Report and Recommendation of Magistrate Judge Dodge addressing the same, the parties' submissions in conjunction therewith, and after *de novo* review of the record, IT IS ORDERED that [73] defendant's motion be, and the same hereby is, granted in part and denied in part. The motion is granted with respect to Dr. Michael Zemaitis's opinion that earlier medical intervention would have prevented Mr. Kinder's death and is denied in all other aspects.

The parties' objections to Magistrate Judge Dodge's Report and Recommendation are overruled. In general, defendant's objections mischaracterize the Report and Recommendation and simply repeat defendant's prior arguments. And the arguments raised in plaintiff's objections fail to undermine the recommendation of Magistrate Judge Dodge. The parties' objections are addressed seriatim.

First, defendant claims that Magistrate Judge Dodge failed to address the lack of methodology Chief Deputy Coroner Nicholas Rekitt ("Rekitt") employed in forming his opinion on Mr. Kinder's cause of death. ECF No. 83 at 5. Notwithstanding the fact that the only

meaningful argument defendant raised against Rekitt concerned his lack of qualifications, the Report and Recommendation *did* consider the various steps of his investigation and the information he gathered therefrom.  See ECF No. 82 at 4–5 (summarizing the methodology set forth in Rekitt's Investigation Report).  And a review of those steps demonstrates that Rekitt did employ a methodology that satisfies the admissibility requirements of Rule 702.

Moreover, Magistrate Judge Dodge's overview of Rekitt's methodology shows that he did not solely rely upon Dr. Eric Lee Vey ("Dr. Vey") in forming his opinion as to Mr. Kinder's cause of death.  See id.  Among other things, Rekitt examined the decedent, reviewed the decedent's medical records, and interviewed medical staff.  So his report belies the notion that he merely relied on another expert's opinion.  And in any event, "it is well-settled that one expert may rely upon another expert's opinion in formulating his own." Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd., 286 F.R.D. 266, 271 (W.D. Pa. 2012).  Thus, Rekitt's determination regarding Mr. Kinder's cause of death—derived from, *inter alia*, his extensive experience and independent investigation—is not rendered unreliable simply because he consulted with another expert to confirm his conclusion.  See In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig., No. 13-MD-2445, 2020 WL 6887885, at *6 (E.D. Pa. Nov. 24, 2020) ("Dr. Fleischer's reliance on his colleagues to confirm his already-formulated conclusion does not constitute a basis for exclusion.").

Similarly, defendant's argument that Dr. Michael Zemaitis ("Dr. Zemaitis") failed to employ any expertise or methodology to determine Mr. Kinder's cause of death likewise is misplaced.  The expertise and information that Dr. Zemaitis relied upon to explain "the significance of the post-mortem levels of drugs found in Kinder's system" are the same bases underlying his opinion on Mr. Kinder's cause of death.  ECF No. 82 at 8.  As noted in the Report and Recommendation, Dr. Zemaitis testified at his deposition:

> [M]y testimony is based on the toxicology report, my knowledge of the drugs, and my knowledge of the concentrations of the drugs, and the extrapolation back to the

>time of the event that show that all three drugs were very high, superthera — supratherapeutic levels, and the combination of three of them all having central nervous system suppression—depression is the cause of death.

ECF No. 73-3 at 14 (Zemaitis Dep. 52:20–53:3).  Moreover, Dr. Zemaitis explained that based on his education, "knowledge and experience as a pharmacologist/toxicologist," and "the events and the description of this case," he concluded that Mr. Kinder's death was "in reasonable degree of medical and scientific . . . certainty . . . due to the ingestion of the toxic amounts in this combination."  Id. at 13 (Zemaitis Dep. 47:14–21).  Thus, Dr. Zemaitis's conclusion regarding Mr. Kinder's cause of death is sufficiently premised on his knowledge, experience, and facts in the record to satisfy Rule 702.[1]

While defendant further asserts that Dr. Zemaitis failed to "express any expert opinion" regarding the drugs' effects on Mr. Kinder "at any relevant time," plaintiff has made clear that Dr. Zemaitis is not offered for this purpose.  See ECF No. 78 at 16.  To the extent defendant's objection is premised upon Dr. Zemaitis's statement that "Mr. Kinder was unable to stand, walk or talk upon his return to the facility," (ECF No. 73-2 at 2), Dr. Zemaitis testified that he derived this information from Mr. Kusky's deposition testimony.  See ECF No. 73-3 at 9 (Zemaitis Dep. 31:13–15).

As an expert witness, Dr. Zemaitis "may base an opinion on facts or data in the case that the expert has been made aware of or personally observed."  Fed. R. Evid. 703.  So, he "need not base his opinion on first-hand knowledge, and in fact can rely on observations made by others as well as [his or her] own expertise."  Corner Pocket, Inc. v. Travelers Ins., No. CIV.A. 12-288,

---

[1] The Report and Recommendation interpreted Dr. Zemaitis's statement that the coroner's determination of Mr. Kinder's cause of death was "a reasonable conclusion" as corroborating Rekitt's opinion on this issue.  See ECF No. 82 at 7 n.5.  The court finds this interpretation to be reasonable and it agrees that any issues under Rule 403 must be addressed at trial.  Nevertheless, defendant seems to argue that under Rule 702, Dr. Zemaitis should be wholly precluded from opining that "complications from drug toxicity" caused Mr. Kinder's death.  In case any confusion remains on this point, such testimony satisfies the foundational requirements of admissibility under Rule 702.

2013 WL 3993967, at *6 (W.D. Pa. Aug. 5, 2013). Dr. Zemaitis applied his specialized knowledge in pharmacology and toxicology to Mr. Kusky's observations and determined that Mr. Kinder was "essentially unconscious . . . due to the combined effects of [the] drugs on his central nervous system." ECF No. 73-3 at 10 (Zemaitis Dep. 34:3–5). Accordingly, Dr. Zemaitis adequately explained the bases underlying his opinion such that it rests upon good grounds.

Finally, defendant maintains that Dr. Vey's opinion regarding earlier medical intervention is too speculative to be admissible. Relatedly, plaintiff argues that the Report and Recommendation incorrectly concluded that Dr. Zemaitis's opinion that earlier medical intervention would have prevented Mr. Kinder's death should be excluded. The Report and Recommendation's discussion of each expert's opinion demonstrates the reliability discrepancy between them. For all the reasons outlined therein, the Report and Recommendation correctly concluded that Dr. Vey's opinion regarding earlier medical intervention is admissible, whereas Dr. Zemaitis's is not.

Based on the foregoing, the [82] Report and Recommendation filed on November 27, 2024, as augmented above is adopted as the opinion of the court.

s/David Stewart Cercone
David Stewart Cercone
Senior United States District Judge

cc: Jason E. Matzus, Esquire
Carmen J. Nocera, Esquire
Patricia A. Monahan, Esquire
Marshall Scott Gemberling, Esquire

(*Via CM/ECF Electronic Mail*)